JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Priority | |
|---|---|
| Send | |
| Enter | |
| Closed | |
| JS-5/JS-6 | |
| Scan Only | |

| **CASE NO.:** | CV 14-02515 SJO<br>BK 13-27611 MH | **DATE:** October 13, 2015 |
|---|---|---|

**TITLE:**  In re Douglas Jay Roger

================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                          Not Present
Courtroom Clerk                                          Court Reporter

**COUNSEL PRESENT FOR APPELLANT:**     **COUNSEL PRESENT FOR APPELLEE:**

Not Present                                                Not Present

================================================================
**PROCEEDINGS (in chambers):  ORDER REVERSING BANKRUPTCY COURT'S ORDER DENYING APPELLANT'S MOTION FOR RELIEF FROM STAY**

This matter is before the Court on the appeal by Appellant Revere Financial Corporation ("Revere" or "Appellant") of the United States Bankruptcy Court for the Central District of California's (the "Bankruptcy Court") order denying Revere's Motion for Relief from Stay ("Order") in case number 6:13-BK-27611-MH.  Appellant filed its opening brief ("Opening Brief") on January 29, 2015.  Appellees Douglas Jay Roger ("Roger") and Helen Frazer ("Trustee"), Chapter 7 trustee for the estate of Roger, each filed responsive briefs ("Roger Brief" and "Trustee Brief," respectively) on February 12, 2015.  Appellant filed a reply brief ("Reply Brief") on February 26, 2015.  For the following reasons, the Court **REVERSES** the Bankruptcy Court's Order denying Revere's Motion and **REMANDS** with instructions to grant the Motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND

This appeal is related to three other appeals of bankruptcy orders before this Court[1] and involves an intricate set of facts surrounding Revere's attempt to collect the balance due on two loans, the "Roger Loan" and the "BLP Loan."  On December 29, 2009, Revere filed a Complaint in California state court (the "State Court Action") against Roger, Baleine, Douglas J. Roger, M.D., Inc., APC ("DJRI"), Nicole Ebarb ("Ebarb") (collectively, the "Roger Defendants"), and numerous other individuals, trustees, and partnerships.  (Appellants' Excerpts of Record ("R.")[2] at Tab 1, 8-11.)

---

[1]  *See In re Douglas J Roger M.D. Inc.*, No. CV 15-00127-SJO  (C.D. Cal. Feb. 25, 2015), ECF No. 23; *In re Douglas Jay Roger*, No. CV 15-00087-SJO (C.D. Cal. Feb. 25, 2015), ECF No. 21; *In re Baleine L.P.*, No. CV 14-02513-SJO (C.D. Cal. Jan. 26, 2015), ECF No. 14.

[2]  Unless otherwise indicated, citations to the multi-volume appellate record are designated as "R. at Tab [X], [Y]"  where "[X]" is the tab number and "[Y]" is the page number

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.:  CV 14-02515 SJO<br>BK 13-27611 MH | DATE:  October 13, 2015 |

Revere filed a First Amended Complaint ("FAC") asserting eighteen causes of action against these defendants on November 15, 2012.  (R. at Tab 1, 18-19.)

      A.      Revere's Allegations in the State Court Action

The FAC alleges the following with respect to the Roger Loan:  On August 21, 2007, non-party 1st Centennial Bank (the "Bank") and Roger entered into a promissory note ("Roger Note").  (R. at Tab 1, 36 ¶ 61.)  DJRI, a California professional corporation, along with Roger, entered into a security agreement ("Roger Note Security Agreement") with the Bank on August 21, 2007 securing the Roger Note with "Collateral," as the term is defined in the Roger Note Security Agreement. (R. at Tab 1, 36 ¶ 63.)  Revere and DJRI also entered into a commercial guaranty ("Roger Note Guaranty") on August 21, 2007 in which DJRI guaranteed repayment of the Roger Note in full as and when due, and agreed to repay all expenses the Bank might incur to enforce the Roger Note Guaranty.  (R. at Tab 1, 37 ¶ 66.)  This set of agreements is collectively referred to as the "Roger Note."

The FAC alleges the following with respect to the BLP Loan:  Between December 7, 2007 and October 6, 2008, the Bank loaned money to Baleine.  (R. at Tab 1, 38 ¶ 69.)  On December 7, 2007, the Bank and Baleine signed a promissory note ("BLP Note"), under which Baleine agreed to pay all expenses the Bank incurred to collect on the BLP Note if Baleine failed to pay the BLP Note in full when it came due.  (R. at Tab 1, 38 ¶ 70.)  Also on December 7, 2007, Roger and DJRI entered a guaranty under which Roger and DJRI agreed to repay the BLP Note in full when it came due ("BLP Note Guaranty"), and agreed to pay all expenses the Bank might incur to enforce the BLP Note Guaranty if Roger and DJRI failed to perform. (R. at Tab 1, 38-39 ¶¶ 71-73.)  At the time the BLP Loan was made, Ebarb was a general partner at Baleine.  (R. at Tab 1, 25 ¶ 13.) This set of agreements is collectively referred to as the "BLP Loan."

The FAC further alleges that in June 2009, non-party Federal Deposit Insurance Corporation, as receiver of the Bank, assigned all right, title, and interest in the Roger Note, the Roger Note Security Agreement, the Roger Note Guaranty, the BLP Note, and the BLP Note Guaranty to Revere. (R. at Tab 1, 39-46 ¶¶ 75-117.)  The FAC alleges that Roger breached the Roger Loan by failing to repay the $350,000 loan in full and as when due in accordance with the loan agreements' terms. (R. at Tab 1, 39 ¶¶ 78-80.)  The FAC further alleges that Roger, Baleine, and Ebarb breached the BLP Loan by failing to repay the $500,000 loan in full and as when due in accordance with the loan agreements' terms.  (R. at Tab 1, 41 ¶¶ 86-89.)  Revere also requests (1) prejudgment unpaid accrued interest; (2) attorneys' fees, expenses, and costs; (3) the appointment of a receiver to take possession of the Roger Loan collateral; (4) an order directing

---

      associated with the two-volume Appendix (Excerpt of Record) by Appellant Revere Financial Corporation for Opening Brief.  (*See* ECF Nos. 15-16.)

CASE NO.:   CV 14-02515 SJO                    DATE:   October 13, 2015
             BK 13-27611 MH

a public sale of the Roger Note collateral; and (5) other forms of relief discussed more fully below. (R. at Tab 1, 73-79.)

The relevant causes of action asserted by Revere in the State Court Action are: (1) three state-law causes of action for breach of the Roger Note, Roger Note Security Agreement, and Roger Guaranty against Roger and DJRI; (2) one state-law cause of action for judicial foreclosure of the Roger Note Security Agreement against Roger and DJRI; (3) two state-law causes of action for breach of the BLP Note and BLP Guaranty against Roger, DJRI, Baleine, and Ebarb (collectively, the "Loan Claims"). (R. at Tab 1, 39-46 ¶¶ 76-117.) Revere also asserts a claim for declaratory relief ("Trust Claim") that numerous trusts are invalid and that the trustees of these trusts must ransfer legal title to all assets of the trusts to Roger. (R. at Tab 1, 56-59 ¶¶ 160-174.) Finally, Revere asserts claims of fraud due to intentional and negligent misrepresentation against Roger, DJRI, Baleine, and Ebarb ("Fraud Claims"), as well as a claim of fraudulent conveyance against Roger, BLP, Ebarb, and others ("Fraudulent Conveyance Claim"). (R. at Tab 1, 59-72 ¶¶ 175-212.)

The parties do not dispute that over the next four years, significant motion practice and contested discovery battles defined the State Court Action.[3] On August 30, 2013, however, the state court issued a non-final minute order granting summary adjudication in Revere's favor as to each of the Loan Claims, determining that Revere is entitled to rely on the terms of the promissory notes ("Loan Order"). (R. at Tab 1, 143.) Thus, the state court determined that Roger and DJRI are jointly and severally liable to Revere on the Roger Loan and that Roger, DJRI, Baleine, and Ebarb are jointly and severally liable to Revere on the BLP Loan. (R. at Tab 1, 39-46 ¶¶ 76-117.) In the Loan Order, the state court expressly required Revere "to prepare and notice the orders on the motions." (R. at Tab 1, 143.)

Two months later, on October 28, 2013, the state court issued an order granting in part and denying in part Revere's motion for summary adjudication of the Trust Claim ("Trust Order"). (R. at Tab 1, 154.) The Trust Order granted Revere's motion as to three of the four trusts and their trustees due to a lack of credible evidence these trusts had beneficiaries, but denied the motion as to the fourth trust (the "Hiram Trust") because there was evidence in the record that created

---

[3] Revere alleges by way of an uncontested declaration that the Roger Defendants evaded discovery, "leading to eight motions to compel on sixteen sets of discovery, two motions for protective orders, and order appointing a discovery referee, an order imposing $20,000 in discovery sanctions against the Roger Defendants and their attorneys, and an order imposing evidentiary sanctions against Roger." (R. at Tab 1, 14 ¶ 23.) Moreover, over three dozen motions were heard and more than a million dollars were spent in attorneys' fees in the State Court Action prior to the filing of the bankruptcy petitions. (*Id.*)

| | |
|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** |

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: <u>CV 14-02515 SJO</u><br>         <u>BK 13-27611 MH</u> | DATE: <u>October 13, 2015</u> |

a material issue of fact as to whether the Hiram Trust had a beneficiary. (R. at Tab 1, 154-56.) Revere dismissed the Fraud Claims prior to filing the instant appeal. (R. at Tab 1, 9.)

      B.      <u>Roger and Other Entities File for Chapter 7 Bankruptcy</u>

Days before the state court issued the Trust Order, on October 25, 2013, Roger voluntarily petitioned to enter chapter 7 bankruptcy ("Roger Bankruptcy"). (R. at Tab 1, 14 ¶ 23.) Also in late October 2013, Baleine petitioned to enter chapter 7 bankruptcy. *See In re Baleine L.P.*, No. 6:13-bk-27610-MH (Bankr. C.D. Cal. Oct. 24, 2013), ECF No. 1. It is undisputed that after Roger filed for bankruptcy, no party removed the State Court Action to the Bankruptcy Court by the deadline to do so; i.e., 90 days after Roger's bankruptcy filing. (R. at Tab 1, 16 ¶¶ 28.) It is also undisputed that Revere did not draft and submit to the state court the summary judgment order requested in the Loan Order by the time Roger and Baleine entered chapter 7 bankruptcy. (*See* R. at Tab 3, 176-77.)

A central issue in the Roger Bankruptcy is the scope of a stay of the State Court Action that is automatically triggered pursuant to 11 U.S.C. section 362 by Roger entering chapter 7 bankruptcy. (R. at Tab 1, 15-16 ¶¶ 24-25.) In light of this issue, on April 25, 2014, several months into Roger's chapter 7 bankruptcy proceedings, Revere filed a motion for relief from automatic stay (the "Motion") with the Bankruptcy Court. (R. at Tab 1, 1.) The thrust of Revere's argument was that it should not be forced to litigate the State Court Action piece-meal, where Revere's state law causes of action against Roger and Baleine were automatically stayed by the filing of Roger and Baleine's chapter 7 bankruptcy petitions, but Revere's same causes of action against DJRI and Ebarb, who were not in chapter 7 proceedings, were not stayed. (R. at Tab 2, 161-63.) Specifically, Revere requested that the Bankruptcy Court lift the stay imposed by the Roger Bankruptcy "to liquidate all of R[evere]'s causes of action on the loan documents and all of R[evere]'s causes of action to void sham trusts" by:

- Entering orders on the motions that the State Court previously heard;
- Trying the one remaining cause of action to void a sham trust;
- Entering judgment; and
- Entering orders on any post-judgment motions for attorneys' fees and costs.

(R. at Tab 2, 162.) Roger filed an opposition to the Motion on May 6, 2014, arguing that Roger would be prejudiced by a lift of the stay and that there was no "cause" to support lifting the stay. (R. at Tab 3.) Indeed, Roger argued that "[t]he dispute [Revere] seeks to take back to the Superior Court is the determination of the reasonableness of [Revere's] attorney's fees and costs, including the costs of the receiver and to have the Hiram Trust declared invalid." (R. at Tab 3, 176.)

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.: CV 14-02515 SJO <br> BK 13-27611 MH | DATE: October 13, 2015 |

Roger further contended that

> [t]here is no need to try the validity of the Hiram Trust [as] Debtor has been working with the Chapter 7 trustee to make the arrangements to bring all the assets of all of the trusts, including the Hiram Trust that is the subject of this motion, into the bankruptcy estate as property of the estate. Debtor submits that litigating the validity of the one remaining trust would be a waste of money and judicial resources. It would, however, give [Revere] the opportunity to add tens of thousands of dollars, or more, to its proof of claim.

(R. at Tab 3, 176.)

Also on May 6, 2014, Trustee filed an opposition to the Motion, arguing no cause exists to grant relief from the automatic stay since allowing the action to proceed in the state court would not be quicker or result in judicial economy as argued by Revere." (R. at Tab 4, 190.) "To the contrary," argued Trustee, "granting the Motion would adversely affect the bankruptcy case" because allowing the State Court Action "to proceed would interfere with the Trustee's efforts to recover and liquidate assets of the Debtor, result in unnecessary duplicative litigation and deplete the assets of the bankruptcy estate thereby adversely impacting creditors." (R. at Tab 4, 190.) Moreover, Trustee objected to several aspects of a $538,585.43 proof of claim filed by Revere in the Roger Bankruptcy (the "Revere Claim"): $1,621,241.97 for Revere's attorneys' fees and expenses; $813,774.58 for receiver's fees and expenses; and Revere's claim that $2,973,602 of the Revere Claim is secured. (R. at Tab 4, 191-92, 204-06, 213-20.)

Both Roger and Trustee filed formal objections to the Revere Claim in the Roger Bankruptcy. (*See* R. at Tab 5; Tab 6.) Roger objected to the Revere Claim on the ground that Roger had not defaulted on the Roger Loan or BLP Loan, and although the state court had entered minute orders, "[s]ince no orders on the motions and judgments were ever submitted to the Superior Court, the minute orders issued by the Superior Court never became final orders and judgments. Accordingly, Dr. Roger (and Baleine) are not collaterally estopped from disputing the validity of Revere's claim before this court." (R. at Tab 6, 665.) Trustee objected to the Revere Claim on the grounds that (1) Revere is not entitled to post-petition interest; (2) Revere is not entitled to a claim for receiver's fees; (3) the receiver's fees are unsupported and include post-petition fees and costs; (4) the attorneys' fees claimed are unsupported and unreasonable; (5) Revere has failed to properly allocate its lender expenses between Roger, Baleine, and DJRI and/or between the Loan Claims and the non-Loan Claims; and (6) Revere is not entitled to post-petition attorneys' fees. (*See generally* R. at Tab 5.)

///
///
///

| | |
|---|---|
| CASE NO.: CV 14-02515 SJO<br>BK 13-27611 MH | DATE: October 13, 2015 |

### C. The Hearing on Revere's Motion for Relief from Stay

On November 5, 2014, the Bankruptcy Court held a continued hearing on the Motion (the "Hearing") and denied the Motion the same day. (R. at Tab 16, 810-920; Tab 11, 776.) At the Hearing, the Bankruptcy Court made the following legal and factual findings:

- Granting relief from stay would be "unnecessary/inefficient under the *Curtis* factors." (R. at Tab 16, 815:2-3.)
- The principal owing on the Roger Loan and BLP Loan was undisputed, and the interest on the loans was "readily calculable." (R. at Tab 16, 815:3-7.)
- The Bankruptcy Court was capable of determining the amount of the pre-petition fees under state law, and was required to determine the post-petition portion of Revere's bankruptcy claim: "[T]hese fees are going to be, you know the—certainly the post-petition fees are going to be—are going to be determined by myself. I can determine the pre-petition fees." (R. at Tab 16, 817:1-6.)
- Any potential for inconsistent rulings and the existence of non-debtor parties was "outweighed in its—in the totality by my review of the *Curtis* factors." (R. at Tab 16, 829:8-14.)
- Although some of the *Curtis* factors could weigh in favor of granting relief from stay, "in the wash I think that the better argument is that it stays here." (R. at Tab 16, 835:22-836:2.)

Moreover, on several occasions, the Bankruptcy Court expressed its concern for judicial efficiency and the need to avoid the excessive costs to the estate in defending the State Court Action that would be generated if the stay was lifted. (*See, e.g.*, R. at Tab 16, 843:13-844:1, 846:13-847:8.) The Order issued on November 19, 2014. (R. at Tab 11.)

## II. DISCUSSION

Appellant challenges the Bankruptcy Court's Order denying Appellant's motion for relief from stay. In its Opening Brief, Appellant makes the following arguments: (1) the Bankruptcy Court committed reversible error by denying relief from stay as a matter of law; and (2) the Bankruptcy Court committed reversible error by denying relief from stay as a matter of fact. (*See* Appellant's Opening Brief, ECF No. 16.)

In the Trustee Brief, Trustee responds that the Bankruptcy Court (1) did not err in failing to give controlling authority to certain factors, where they were outweighed by others; and (2) correctly applied and weighed the applicable *Curtis* factors. (Appellee's Reply Brief, ECF No. 24).

JS-6     UNITED STATES DISTRICT COURT
         CENTRAL DISTRICT OF CALIFORNIA

         CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-02515 SJO          DATE:  October 13, 2015
            BK 13-27611 MH

Before reaching the merits of the Bankruptcy Court's Order, the Court must first consider whether it has jurisdiction to hear the instant appeal.

    A.    Jurisdiction

"The decision of a bankruptcy court granting or denying relief from an automatic stay under section 362(d) is a final decision reviewable by" courts sitting in the Ninth Circuit.  In re Moore, No. CV 11-00379 DAE, 2011 WL 5593185, at *2 (D. Haw. Nov. 17, 2011) (holding that district courts have jurisdiction to hear appeals from orders of bankruptcy courts sitting in their district); *In re Conejo Enters., Inc.* ("*Conejo*"), 96 F.3d 346, 351 (9th Cir. 1996) (citing *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 429 (9th Cir. 1984) ("Congress intended the courts to conclusively and expeditiously adjudicate, apart from the bankruptcy proceedings as a whole, complaints for relief from the automatic stay.  Immediate appeal from decisions of the bankruptcy appellate panel is plainly necessary to fulfill such congressional intent.")).  Appellant filed a Notice of Appeal on December 3, 2014, within the fourteen day period prescribed by Federal Rules of Bankruptcy Procedure 8002(a)(1) and 8003(a)(1) (R. at Tab 12), and accordingly, the Court has jurisdiction to hear Revere's appeal of the Order.  Fed. R. Bankr. P. 8002(a)(1); 8003(a)(1).

    B.    Standard of Review

Having determined that the Court has jurisdiction to hear the instant appeal, the Court examines the standard by which it must review the Order.  "The district court acts as an appellate court in an appeal from a bankruptcy decision." *Los Robles Care Ctr., Inc. v. Soc'y of U.S. Dep't of Health & Human Servs.*, 532 B.R. 308, 311 (C.D. Cal. 2015), *appeal docketed*, No. 15-55845 (9th Cir. June 4, 2015).  "The decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court, and [appellate courts] review such decision under the abuse of discretion standard." *Conejo*, 96 F.3d at 351 (citing *In re Arnold*, 806 F.2d 937, 938 (9th Cir.1986)).  Decisions committed to the trial court's discretion will be reversed only where they are "based on an erroneous conclusion of law or when the record contains no evidence on which [the trial court] rationally could have based that decision." *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988) (brackets in original) (citing *In re Hill*, 775 F.2d 1037, 1040 (9th Cir. 1985)). A district court "reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*." *In re First Alliance Mortg.*, 264 B.R. 634, 644 (C.D. Cal. 2001); *In re Banks*, 263 F.3d 862, 867 (9th Cir. 2001) ("In reviewing decisions of the bankruptcy court, legal conclusions are reviewed de novo, factual determinations are reviewed for clear error, and mixed questions of law and fact are reviewed de novo." (citation omitted)).

    C.    Legal Standard

"Under 11 U.S.C. § 362(a), '[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor,' except in those cases specifically enumerated in § 362(b)." *Conejo*, 96 F.3d at 351

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 14-02515 SJO
BK 13-27611 MH

DATE:  October 13, 2015

(quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990)).  "The automatic stay provision is 'one of the fundamental debtor protections provided by the bankruptcy laws' and 'plays a vital role in bankruptcy.'"  *In re Landmark Fence Co.*, No. CV 11-00934 AHM, 2011 WL 6826253, at *3 (C.D. Cal. Dec. 9, 2011) (quoting *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)).  Indeed, the automatic stay "gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."  *Conejo*, 96 F.3d at 351 (internal citations omitted).  In order to effectuate these purposes, "Congress intended the scope of the stay to be broad."  *In re Computer Commc'ns, Inc.*, 824 F.2d 725, 729 (9th Cir. 1987).

A creditor may move for relief from automatic stay under 11 U.S.C. § 362, which provides that a bankruptcy court "shall grant relief from the stay" upon a showing of "cause."  11 U.S.C. § 362(d).  "Cause" is determined on a case-by-case basis.  *Tucson Estates*, 912 F.2d at 1166 (citation omitted).  In determining whether "cause" exists, courts often analyze twelve factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).  These factors, which have come to be known as the "*Curtis* factors," are as follows:

(1) Whether the relief will result in a partial or complete resolution of the issues;
(2) The lack of any connection with or interference with the bankruptcy case;
(3) Whether the foreign proceeding involves the debtor as a fiduciary;
(4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;
(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
(7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties;
(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination;
(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
(10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties;
(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and
(12) The impact of the stay and the "balance of hurt."

| | |
|---|---|
| CASE NO.: CV 14-02515 SJO<br>BK 13-27611 MH | DATE: October 13, 2015 |

40 B.R. at 799-800 (internal citations omitted); *see also In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004) (adopting the *Curtis* factors and recognizing courts in other circuits that have done the same).

The Ninth Circuit has recognized that "the *Curtis* factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). While the *Curtis* factors are widely used to determine the existence of "cause," not all of the factors are relevant in every case, nor is a court required to give each factor equal weight. *Plumberex*, 311 B.R. at 560. According to the court in *Curtis*, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *Curtis*, 40 B.R. at 806. That said, some cases involving the automatic stay provision do not mention the *Curtis* factors at all. *See, e.g., Conejo*, 96 F.3d at 353. Nevertheless, "[a]lthough the term 'cause' is not defined in the Code, courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial." *Plumberex*, 311 B.R. at 556 (citing *Tucson Estates*, 912 F.2d at 1166).

    D.    <u>Analysis</u>

Although the Bankruptcy Court did not address the applicability or importance of each *Curtis* factor during the Hearing or in the Order, the transcript of the Hearing indicates that the Bankruptcy Court considered a number of issues that might result from relieving Appellant of the automatic stay. The record does not indicate that *Curtis* factors 3, 4, 5, 6, 8, or 9 are at issue in this case, nor do the parties argue to the contrary. Therefore, the Court addresses only the potentially applicable *Curtis* factors.

        1.    <u>Whether the relief will result in a partial or complete resolution of the issues</u>

Neither Appellant nor Appellee argues that the relief sought by Appellant would lead to a partial or complete resolution of the issues before the Bankruptcy Court. There is no dispute that granting relief from stay and permitting Appellant to litigate the State Court Action would not resolve any of the underlying priority and security issues in the Roger or Baleine bankruptcies. Indeed, Trustee objected to the Revere Claim in the bankruptcy proceedings on a ground that only the Bankruptcy Court can determine; namely, the extent to which any portion of Revere's claim is secured. (R. at Tab 5, 335-40.)

Priority of claims are within the exclusive jurisdiction of the bankruptcy court and cannot be resolved in a state action. *See People of State of New York v. Irving Trust Co.*, 288 U.S. 329, 332

Case 5:14-cv-02515-SJO Document 29 Filed 10/13/15 Page 10 of 18 Page ID #:1380

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: <u>CV 14-02515 SJO</u><br><u>BK 13-27611 MH</u> | DATE: <u>October 13, 2015</u> |

(1933). As a result, this factor weighs against granting relief from stay, and the Bankruptcy Court did not commit clear error in so finding. Although the Bankruptcy Court did not address this factor head on, the record indicates that the Bankruptcy Court considered this issue, as evidenced by the Bankruptcy Court's conclusion that granting relief from stay would be "unnecessary/inefficient under the *Curtis* factors." (R. at Tab 16, 815:2-3.) The Bankruptcy Court reached this conclusion after stating it could easily determine many of the issues that arose in the State Court Action—including the principal and interest due on the loans, which were not disputed, and the amount of pre- and post-petition attorneys' fees—and that these issues did not need to be determined in another forum. (R. at Tab 16, 817:1-6.) Accordingly, the Bankruptcy Court did not err in reaching the legal conclusion that issues would remain if relief from stay were granted, nor did the Bankruptcy Court abuse its discretion in finding that this factor weighs against granting relief from stay.

        2.    <u>Whether there is a lack of any connection with or interference with the bankruptcy case</u>

Appellant and Appellees dispute whether there is any evidence to support a conclusion that granting relief from stay would interfere with the Roger Bankruptcy. (Appellant's Opening Br. 26; Appellee's Reply Br. 11-12.) Because this is "[t]he most important factor in determining whether to grant relief from the automatic stay," the Court considers each of the parties' arguments. *In re Curtis*, 40 B.R. at 806.

Trustee offers three reasons why granting relief from stay would interfere with the Roger Bankruptcy. First, Trustee claims that granting relief from stay would force Trustee "to expend time, effort and estate funds litigating matters with little or no relevance to the amount of the Revere Proof of Claim, or the scope of Revere's security interest in assets of the Debtor." (Appellee's Reply Br. 12.) Second, Trustee argues that "allowing the State Court Action to proceed in State Court would interfere with the Trustee's negotiations with the Debtor and Ms. Ebarb regarding the partnerships and trusts in which the Debtor has an interest." (*Id.*) Given "Trustee has obtained a preliminary agreement from the Debtor and Ms. Ebarb that they will voluntarily liquidate the various partnerships and trusts in which the Debtor has an interest," allowing Appellant "to proceed on its claims against the Hiram Trust and Ms. Ebarb, in particular, would greatly impact the Trustee's negotiations in this regard." (*Id.*) Finally, Trustee argues that allowing Appellant to proceed with certain causes of action in the State Court Action "would directly impact the administration of the Roger Bankruptcy Case." (*Id.* 12-13.) In particular, should the Trust Claim proceed, Trustee argues there would be interference with her efforts to recover the assets of the Roger Trusts for the benefit of the creditors in the Roger Bankruptcy, particularly given several of these trusts have provisions providing for the dissolution of the trust as a result of a bankruptcy filing. (*Id.* 13.) Moreover, should the Fraudulent Conveyance Claim proceed, creditors other than Appellant would stand to lose assets, as the Trustee, rather than Appellant, has standing to prosecute the Fraudulent Conveyance Claim upon commencement of the

Case 5:14-cv-02515-SJO Document 29 Filed 10/13/15 Page 11 of 18 Page ID #:1381

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:    CV 14-02515 SJO                    DATE:  October 13, 2015
             BK 13-27611 MH

bankruptcy case.  (*Id.*)  And with respect to the Loan Claim in which Appellant seeks judicial foreclosure and a "public sale" of collateral, should the claim proceed in the State Court Action, Trustee's right to recover and sell assets of the Roger estate would be called into question.  (*Id.*)

Appellant responds to each of these arguments as follows.  First, an argument that Trustee would need to expend time, effort, and estate funds litigating matters unrelated to the Roger Bankruptcy is not only irrelevant to this *Curtis* factor, but is also an improper reason to deny relief from stay, as the Ninth Circuit has held that "litigation costs to a bankruptcy estate do not compel a court to deny stay relief."  (Appellant's Reply Br. 9, ECF No. 27.)  Second, neither Trustee nor Roger provided evidence of any preliminary agreement to the Bankruptcy Court, and because the Bankruptcy Court did not have any such agreement before it, it could not have found that lifting the stay would interfere with the Roger Bankruptcy.  (Appellant's Opening Br. 26.)  Moreover, Trustee has not completed liquidating all of the Roger estate's assets and has not distributed any assets to any creditors; as a result, granting relief from stay "simply to liquidate [Appellant's] claim has absolutely no affect [sic] on the Trustee's ability to liquidate assets."  (*Id.*)  Finally, liquidating Appellant's state court claims against Roger as soon as possible "will not interfere with the bankruptcy estate, but instead, best serve the efficient administration of Roger's bankruptcy estate by giving the Trustee a clearer understanding of the scope of Roger's liabilities and the ratio of [Appellant's] claim to Roger's total creditor pool."  (*Id.*)  This point is particularly salient given Appellant did not seek relief from stay to prosecute the Fraudulent Conveyance cause of action, and expressly stated that it would not enforce any state court judgment obtained by lifting the stay. (Appellant's Reply Br. 18.)

The record indicates that the Bankruptcy Court was presented with each of the aforementioned arguments either through the parties' briefs on the Motion or at the Hearing.  (*See generally* R. at Tab 16; Tab 4, 204-06.)  Although it is possible that the Bankruptcy Court took into account and weighed each of these arguments in reaching its ultimate conclusion, the only argument considered by the Bankruptcy Court on the record was Trustee's first argument:  that Trustee would be forced to expend time, effort, and estate funds litigating matters with little or no relevance to the Revere Claim or the scope of Revere's security interest in assets of the estate.  This is evidenced by the Bankruptcy Court's statements in which it recited a concern for judicial efficiency and a desire to avoid the excessive costs to the estate in defending the State Court Action that the Bankruptcy Court believed would be generated if the stay was lifted.  (*See, e.g.*, R. at Tab 16, 843:13-844:1, 846:13-847:8.)  In particular, the Bankruptcy Court espoused a concern that "this case is going to be swallowed up by fees.  At the end of the day, the amount at issue—the true debt we'll call it, the—the amount owing on the note is going to be really tiny little fraction of the claims against the estate."  (R. at Tab 16, 840:16-23.)  When challenged by counsel for Appellant that "the fees in litigating the fees will be so much greater in this court than in the state court," the Bankruptcy Court responded that "based on [its] own experience" this would not be the case.  (R. at Tab 16, 841:9-14.)  Implicit in this exchange is the Bankruptcy Court's belief that the assets of

Case 5:14-cv-02515-SJO   Document 29   Filed 10/13/15   Page 12 of 18   Page ID #:1382

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 14-02515 SJO                    DATE:  October 13, 2015
            BK 13-27611 MH

the Roger estate would be impacted by granting relief from stay and permitting Appellant to continue to litigate the State Court Action.

To the extent the Bankruptcy Court's conclusion rested on a determination that the Roger bankruptcy estate would be harmed by granting relief from stay, such a determination is both legally impermissible and factually unsupported. "Ordinarily, litigation costs to a bankruptcy estate do not compel a court to deny stay relief." *In re Santa Clara Cnty. Fair Ass'n*, 180 B.R. 564, 566 (B.A.P. 9th Cir. 1995) (citations omitted). Neither the Bankruptcy Court nor Appellees provide any argument or authority indicating why this case presents an exception to this rule, particularly where it is speculative at best whether the Roger bankruptcy estate would in fact be harmed by granting relief from stay.  Indeed, the record does not contain **any** documentary evidence concerning projections regarding the comparative attorneys' fees and expenses that would be amassed by litigating in the different fora was before the Bankruptcy Court.  Moreover, although it may be true that the principal and interest due on the Roger Loan and BLP Loan are not in dispute or that the amount and reasonableness of pre-petition and post-petition[4] attorneys' fees and expenses with respect to the Roger and Baleine state court and bankruptcy court matters could be determined by the Bankruptcy Court  (R. at Tab 16, 817:1-6), neither the Bankruptcy Court nor Appellees dispute that the Bankruptcy Court lacks jurisdiction to determine the amount and reasonableness of fees and expenses associated with DJRI and Ebarb, nor that the state court is better situated to determine the amount and reasonableness of the fees and expenses in toto given the State Court Action has been pending for more than four years. It is thus entirely possible that "the fees in litigating the fees will be so much greater in [the bankruptcy] court than in the state court," and that this possibility might outweigh any short-term benefit obtained by Trustee and Roger by not

---

[4] Although the Bankruptcy Court apparently believed that "the post-petition fees are going to be—are going to have to be determined by myself," neither the Bankruptcy Court nor Appellees have provided any support for this proposition. (R. at Tab 16, 817:2-3.) Rather, the law makes clear that bankruptcy courts do not have exclusive jurisdiction to determine the amount of post-petition fees that are part of a claim unless they are part of an over-secured creditor's claim under 11 U.S.C. section 506. *See* 11 U.S.C. § 506(b) ("To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."). There is no evidence in the record, however, that Appellant is an over-secured creditor.  To the extent the Bankruptcy Court mis-spoke at the Hearing and instead meant that it has exclusive jurisdiction to determine *whether* Appellant is an over-secured creditor, this argument would only minimally weigh in favor of denying relief from stay, as both the Bankruptcy Court and the state court would need to determine certain aspects of the attorneys' fees issues.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 14-02515 SJO                             DATE: October 13, 2015
          BK 13-27611 MH

having to concurrently litigate the State Court Action. (R. at Tab 16, 841:9-14.) This possibility is particularly relevant given (1) the lack of any evidence regarding the costs of litigating the State Court Action versus the Roger Bankruptcy; and (2) the apparent lack of consideration given to the length of time necessary to litigate all claims against all debtors and non-debtors in the State Court Action, where the parties have been held jointly and severally liable, versus litigating some claims against the debtors in the Bankruptcy Court and the same claims against non-debtors in the State Court Action, which would require duplicative litigation and the possibility of having multiple courts reach inconsistent judgments.[5] In any event, there is "no evidence on which [the Bankruptcy Court] rationally could have based" its conclusion that granting relief from stay would adversely impact the Roger bankruptcy estate, and therefore the Bankruptcy Court erred in finding that this factor weighed in favor of denying relief from stay. *Windmill Farms, Inc.*, 841 F.2d at 1472.

Even if the Bankruptcy Court did in fact consider Trustee's other arguments as to why granting relief from stay would impact the Roger Bankruptcy, the Bankruptcy Court would have committed reversible error in finding that any of these arguments were either legally or factually supported. First, there is no evidence in the record that the Bankruptcy Court had before it a preliminary agreement between Roger, Trustee, and Ebarb evidencing that these parties were negotiating the transfer of assets of the various partnerships and trusts in which Roger has an interest to the Bankruptcy Estate. Thus, there is "no evidence on which [the Bankruptcy Court] rationally could have based" its decision that such an agreement weighed in favor of denying relief from stay. *In re Windmill Farms, Inc.*, 841 F.2d at 1472. Even if the Bankruptcy Court had access to such an agreement, however, the record reveals that the state court had already determined that the non-Hiram trusts are void, and therefore the res of each trust would automatically revert to Roger, the trustor. (R. at Tab 1, 154.) A review of these trust agreements reveals that although these trusts

---

[5] Although the Bankruptcy Court was careful not to directly call into question the state court's ability to determine the reasonableness of the attorneys' fees in this case, certain statements made by the Bankruptcy Court at the hearing give the Court pause. For example, the Bankruptcy Court stated toward the outset of the hearing that:

> I am concerned that the State Court would—I am—I am concerned about the—in some small part what the—that the ruling on those fees may be more of a—more of a—through a narrow microscope and would not take into account sort of the bigger picture.

(R. at Tab 16, 816:11-15.) To the extent the Bankruptcy Court's decision rested on such an assumption, the Bankruptcy Court committed legal error. *See Tucson Estates*, 912 F.2d at 1167 ("An underlying assumption made by the bankruptcy court was that its decision on this issue and the misappropriation damages claim might be different from the state court's. Yet state law governs both issues, so both courts should reach the same result.").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 14-02515 SJO              DATE:  October 13, 2015
           BK 13-27611 MH

terminate upon the filing of bankruptcy by the trustor, the acting trustees may vote to continue the trust.  (R. at Tab 4, 310-20.)  There is thus no "efficiency" to be gained by permitting the acting trustee for each trust to unilaterally prevent the res of the trusts from reverting to Roger, particularly where the state court has determined the trusts to be void for lack of a beneficiary.  (R. at Tab 1, 154.)  With respect to the Hiram Trust, the record does not reveal that the Bankruptcy Court reviewed the terms of this trust—which is not before the Court on appeal—and therefore the Bankruptcy Court could not have rationally concluded that granting relief from stay would have impacted the Roger bankruptcy estate.

Trustee's final argument is similarly unsupported.  With respect to Trustee's argument that proceeding with the Fraudulent Conveyance Claim and the Loan Claim in which Appellant seeks judicial foreclosure and a "public sale" of collateral "would directly impact the administration of the Roger Bankruptcy Case," Appellant made clear in its Motion that it was not seeking relief from stay to prosecute the Fraudulent Conveyance Claim, nor was it seeking to enforce any judgments obtained in the State Court Action.  (R. at Tab 1, 4 ¶ 2; Tab 2, 162.)  Instead, Appellant sought the entry of orders on motions the state court had previously heard, the entry of an order on any post-judgment motions for attorneys' fees and costs, the ability to try the remaining Trust Claim against the Hiram Trust, and the entry of appropriate judgments.  (R. at Tab 2, 162.)  Thus, there is no basis on which the Bankruptcy Court could have determined that granting relief from stay would adversely impact the Roger Bankruptcy.

Accordingly, the record contains no evidence on which the Bankruptcy Court reasonably could have found that the Roger Bankruptcy proceedings or the Roger bankruptcy estate would have been negatively impacted by lifting the stay in the State Court Action.  To the extent the Bankruptcy Court considered this *Curtis* factor, it improperly concluded that the factor weighs in favor of denying relief from stay.

    7. <u>Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties</u>

Counsel for Appellant stated at the Hearing that the Roger estate has "at most, $50,000 in [non-Revere] creditors that we know of, maybe $52,000 in creditors," evidencing that other creditor parties could be affected by a lift of the stay.  (R. at Tab 16, 844-45.)  Although the record indicates the existence of non-Revere creditors, there is no evidence that granting relief from stay would prejudice the interests of these creditors.

The Bankruptcy Court was presented with briefing and oral argument regarding how the non-Revere creditors of the Roger bankruptcy estate, whose interests are protected by Trustee, could be impacted by any of the following:  (1) an order declaring the Hiram Trust invalid (R. at Tab 16, 844-45); (2) the automatic or voluntary dissolution of the non-Hiram Trusts upon Roger entering chapter 7 bankruptcy (R. at Tab 4, 204-05); (3) the forced sale of Roger Loan collateral (R. at Tab

Case 5:14-cv-02515-SJO   Document 29   Filed 10/13/15   Page 15 of 18   Page ID #:1385

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 14-02515 SJO                                   DATE:  October 13, 2015
           BK 13-27611 MH

16, 871-72); and (4) a larger attorneys' fees and expenses award resulting from lifting the stay. The Court addressed the first three arguments above, however, and found that the record contained no evidence from which the Bankruptcy Court could reasonably have determined that the Roger bankruptcy estate would have been negatively impacted by lifting the stay in the State Court Action.  It follows that there is no evidence that the non-Revere creditors of the Roger bankruptcy estate would be prejudiced by granting relief from stay for any of these reasons.

With respect to the fourth proffered reason, it might appear sensible that depending how the Bankruptcy Court determines the priority of the various liens to the Roger Loan and BLP Loan, the non-Revere creditors' security interests could be adversely impacted by the ultimate determination regarding the amount of attorneys' fees and expenses that would be awarded to Appellant.  That is, the larger the attorneys' fees and expenses award available to Appellant, the fewer the assets of the Roger bankruptcy estate that might be available to certain creditors.  As intuitive as such an argument might appear, however, as noted above, the record does not contain any evidence from which the Bankruptcy Court could reasonably determine that the award of attorneys' fees and expenses would be smaller if the stay remained in place that it would if the stay were lifted.

Accordingly, although the Bankruptcy Court did not address this factor head on, the record contains no evidence from which the Bankruptcy Court could have reasonably determined that lifting the stay would have prejudiced the interests of non-Revere creditors. Therefore, this factor weighs in favor of granting relief from stay, and to the extent the Bankruptcy Court concluded otherwise, the Bankruptcy Court erred as a matter of fact and law.

> 10.  <u>The interests of judicial economy and the expeditious and economical determination of litigation for the parties</u>

The Bankruptcy Court stated at the Hearing that granting relief from stay would be "unnecessary/inefficient under the *Curtis* factors" because there is no dispute what is owed on the notes or the interest due on the notes, and also because the Bankruptcy Court has "exclusive jurisdiction over post-petition fees" and "concurrent jurisdiction as to pre-petition fees." (R. at Tab 16, 815:1-11.)  Both the record and case law indicate that the Bankruptcy Court erred in reaching this unsupported conclusion.

First, as noted above, there is no evidence in the record from which the Bankruptcy Court could have reasonably determined that the award of attorneys' fees and expenses would be smaller if the stay remained in place than if the stay were lifted.  Indeed, neither the Bankruptcy Court nor Appellees provide any evidence to rebut Appellant's inherently sensible argument that it and the Bankruptcy Court would both need to incur substantial monetary and administrative costs in familiarizing the Bankruptcy Court with the four years' worth of fees incurred in the State Court Action.  (R. at Tab 16, 831.)  Thus, the Bankruptcy Court's conclusion that "based on [its] own experience" the fees would be lower if the stay remained in place is not supported by any

Case 5:14-cv-02515-SJO  Document 29  Filed 10/13/15  Page 16 of 18  Page ID #:1386

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| CASE NO.: | CV 14-02515 SJO | DATE: | October 13, 2015 |
| --- | --- | --- | --- |
| | BK 13-27611 MH | | |

evidence, and the Bankruptcy Court committed clear error in reaching this factual determination. (R. at Tab 16, 841:9-14.)

In addition, Appellant cites to numerous cases indicating that it would be in the interest of judicial economy to grant relief from stay in this case.  In its Opening Brief, Appellant contends that lifting the stay and permitting Appellant to obtain orders codifying the state court's minute order and to litigate the Trust Claim against the Hiram Trust would be far more efficient and economical than litigating the State Court Action and bankruptcy proceedings in a piece-meal manner.  In support of these arguments, Appellant cites to *In re America West Airlines*, which holds that "it would be a waste of [a bankruptcy court's] judicial resources to attempt to estimate the claim and its priority among other claimants."  148 B.R. 920, 925 (D. Ariz. 1993).  The Court finds *In re America West Airlines* to be persuasive.  Here, as in *In re America West Airlines*, there can be no question that it would be "more appropriate" for the non-bankruptcy court "to first determine the non-bankruptcy issues, i.e., whether a claim exists and the damages therein if any.  After such determination, then the bankruptcy issues become relevant."  *Id.* at 924-25.  Indeed, Appellant and Roger dispute whether Roger is liable under the Roger Loan and BLP Loan, and therefore it is not the amount of the notes that is at issue, but instead the liability under the loans.

Moreover, given the advanced stage of the State Court Action—at the time the State Court Action was stayed on January 2, 2014, trial was scheduled for April 11, 2014, just over four months away (R. at Tab 1, 14-15 ¶ 23, 16 ¶¶ 26-27)—it stands to reason that judicial economy would be well served by permitting the State Court Action to reach resolution before addressing the bankruptcy issues, particularly where the State Court Action involves solely state law issues and not doing so runs a significant risk of creating inconsistent rulings.  Indeed, given the existence of two non-debtor parties over whom the Bankruptcy Court cannot exercise jurisdiction and the state court's familiarity with the discovery practices that occurred in the four plus years since the Complaint was filed, it would be unreasonable for the Bankruptcy Court to conclude that it is better equipped than the state court to determine issues such as the reasonableness of attorneys' fees.  Cases from various courts are in accord, although some concern a related doctrine of abstention rather than a motion for relief from stay.  *See In re Castlerock Props.*, 781 F.2d 159, 163 (9th Cir. 1986) ("In this case, several factors could constitute 'cause.'  A clear congressional policy exists to give state law claimants a right to have claims heard in state court. . . . More importantly, a state court trial is about to take place involving the very same issues."); *Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 719 (Bankr. D. Del. 1996) ("The court has also considered other factors that are germane to this type of motion [for relief from stay].  Pursuit has invested significant human resources and about $800,000 in legal fees in prosecuting the Texas action to date.  Common sense suggests that those investments would be best protected by allowing the Texas action to proceed."); *In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 570-71 (Bankr. N.D. Cal. 2002) (finding that where "state law issues predominate over bankruptcy issues" and where almost all claimants "commenced litigation in state court prior to the petition date," abstention is favored); *In re McGuirt*, 61 B.R. 974, 976 (Bankr. S.D. Tex. 1986) ("If it be a matter of discretion, considering all

Case 5:14-cv-02515-SJO   Document 29   Filed 10/13/15   Page 17 of 18   Page ID #:1387

JS-6                     UNITED STATES DISTRICT COURT
                          CENTRAL DISTRICT OF CALIFORNIA

                              CIVIL MINUTES - GENERAL


CASE NO.:   CV 14-02515 SJO                DATE:  October 13, 2015
            BK 13-27611 MH

of the relevant factors, giving special emphasis to the fact that the state court litigation is actually on the verge of trial and can be reached shortly, discretion does dictate that the interests of justice require abstention."). Tellingly, Appellees have cited to no relevant authority to the contrary.

The Bankruptcy Court therefore committed clear error in concluding that granting relief from stay would be "unnecessary/inefficient under the *Curtis* factors." (R. at Tab 16, 815:2-3.)

> 11. <u>Whether the foreign proceedings have progressed to the point where the parties are prepared for trial</u>

As stated above, the record indicates that, at the time the State Court Action was stayed on January 2, 2014, trial in the State Court Action was set to begin April 11, 2014. (R. at Tab 1, 14-15 ¶ 23, 16 ¶¶ 26-27.) This factor therefore suggests that Appellant has "cause" to seek relief from stay, and weighs against the reasonableness of the Bankruptcy Court's decision to deny relief from stay. "[C]ourts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial." *Plumberex*, 311 B.R. at 556 (citing *Tucson Estates*, 912 F.2d at 1166); *see also Curtis*, 40 B.R. at 805 ("[A] desire to permit an action to proceed to completion in another tribunal . . . contemplates the situation in which the debtor is a party to a prepetition action that has progressed to the point where it would be a waste of the parties' and the court's resources to begin anew in the bankruptcy court.") (internal citation and quotation marks omitted). Thus, to the extent the Bankruptcy Court found that this factor weighed against granting relief from stay, the Bankruptcy Court erred.

> 12. <u>The impact of the stay and the "balance of hurt"</u>

Appellant and Appellee dispute which party would stand to suffer more should relief from stay be denied or granted, respectively. As discussed above, the record does not contain sufficient evidence from which the Bankruptcy Court could reasonably conclude that any harm would befall the Roger estate or its creditors should relief from stay be granted. The record does, on the other hand, reveal that Appellant stands to face significant harm should the stay persist. In particular, Appellant would be prejudiced by having to litigate its claims against Roger and Baleine in a piece-meal fashion. Indeed, the Bankruptcy Court agreed with Appellant at the Hearing that Appellant would need to expend substantial resources to familiarize the Bankruptcy Court with the four years' worth of fees incurred in the State Court Action. (R. at Tab 16, 830-31.) Thus, this factor weighs in favor of granting relief from stay.

///
      E.    <u>Conclusion</u>

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 14-02515 SJO                    DATE:  October 13, 2015
           BK 13-27611 MH

The role of a reviewing court is "'not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record.'"  *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)).  An analysis of the applicable *Curtis* factors reveals that five factors—including "[t]he most important factor in determining whether to grant relief from the automatic stay," *Curtis*, 40 B.R. at 806—indicate that "cause" exists to grant relief from stay, while one factor weighs against a finding of "cause."  The Court's examination that the Bankruptcy Court failed to give any weight to certain facts, and reached improper conclusions regarding other facts.  Thus, on this record, the Court finds that the Bankruptcy Court abused its discretion in finding a lack of "cause" to support granting relief from stay.

III.     RULING

For the foregoing reasons, the Court finds that the Bankruptcy Court abused its discretion in denying Appellant Revere Financial Corporation's Motion for Relief from Stay, and **REVERSES** the Bankruptcy Court's Order.  The Court **REMANDS** the case with instructions to grant Appellant's Motion.

IT IS SO ORDERED.